```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

ROBERT GIOVANELLI,              :Civ. A. No. 09-1082(NLH)(AMD)
                                :
                                :
                                : OPINION
        Plaintiff,              :
                                :
    v.                          :
                                :
D. SIMMONS GENERAL              :
CONTRACTING,                    :
                                :
        Defendant/              :
        Cross-claimant.         :
                                :
```

**APPEARANCES:**
MICHAEL W. KRUTMAN
KRUTMAN & EUSTACE, PC
2525 NOTTINGHAM WAY
HAMILTON, NJ 08619
     *On behalf of plaintiff*

STEVEN M. SWAIN
LAW OFFICE OF DEBRA HART
303 FELLOWSHIP ROAD
SUITE 300
MOUNT LAUREL, NJ 08054
     *On behalf of D. Simmons General Contracting*

**HILLMAN, District Judge**

    This matter has come before the Court on the motions of plaintiff and defendant for summary judgment.  For the reasons expressed below, defendant's motion will be granted, and plaintiff's motion denied as moot.

                          **BACKGROUND**

    This case concerns injuries sustained by plaintiff, Robert Giovanelli, when a three foot by seven foot bathroom cabinet fell on him while he and a coworker attempted to move the cabinet at

his place of employment, Trane Corporation, in Trenton, New Jersey.

In March 2007, several of Trane's bathrooms were being renovated, and part of the work was being performed by defendant D. Simmons General Contracting (hereinafter "Simmons"). Dennis Simmons would perform the same tasks for each bathroom: taking out the fixtures, partitions, ceiling and tile. During the course of the remodeling job, Simmons would store his tools--a level, screw gun, handsaw, box of screws, screwdrivers, and snips--in the bathroom cabinet of the bathroom he was working on so that he did not have to transport his tools in and out of Trane every night. He obtained approval to store his tools in the cabinet by a Trane employee, Mike Roberts, who was in charge of the bathroom remodeling job. Trane removed the existing locks on the cabinets so that Simmons could put his own lock on the bathroom cabinet in which he stored his tools. Only he had a key to that lock. The bathrooms were unlocked, and during the regular operation of the bathrooms, the cabinets typically stored mops, buckets, paper towels and other cleaning supplies.

On March 7, 2007, Brian Salay of Trane ordered plaintiff and a coworker, Billy Haas, to move the cabinet from the bathroom that Simmons had just completed work on. The cabinet needed to be moved in order to permit the flooring contractor to perform his renovating work. Plaintiff found the cabinet to be locked,

and told Salay.  According to plaintiff, Salay told plaintiff that the cabinet was empty, and to move it anyway.

In order to move the cabinet, plaintiff tilted it, and Haas slid a refrigerator dolly under it, ran a strap around it, and ratcheted it tightly to the dolly.  Haas then leaned the dolly back and began pushing it out of the bathroom.  When they reached a set of stairs, plaintiff went in front of the dolly, acting as a "brake man" as Haas lowered it down each step.  At the third step, Haas told plaintiff that he was losing his grip.  According to plaintiff, the cabinet pushed him down and ran over him, causing him serious injuries.[1]

Plaintiff claims that D. Simmons General Contracting is liable for his injuries because Simmons' act of storing his heavy tools in the bathroom cabinets was negligent.  Plaintiff claims that even though Simmons knew the floor work still needed to be completed, and that the cabinet had to be removed in order to do so, he negligently left his heavy tools in the cabinet that could only be unlocked by him.[2]

---

[1] Plaintiff's injuries included, "right comminuted tibial plateau fracture (medial and midline), subluxation of the patella of the right knee, open reduction and internal fixation of the right tibial plateau fracture, chronic post-traumatic chondromalacia patella to the right knee, peroneal nerve and tibial nerve neuropathy to the right lower extremity, positive EMG/NCV, and fracture of the right femur."  (Sec. Amended Compl. ¶ 12.)

[2] In addition to Simmons, plaintiff also filed suit against Applied Polymer-Solutions Products, which then filed a cross-claim against defendant D. Simmons General Contracting and a

**DISCUSSION**

    **A.**    **Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

    **B.**    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility

---

third-party complaint against James Thomas Enterprises ("JTE"). Applied Polymer and its subcontractor JTE were entities responsible for installing the new flooring in the Trane bathrooms. The claims involving Applied Polymer and JTE have been dismissed.

4

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u> Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Simmons has moved for summary judgment, arguing that plaintiff has not presented any evidence to support Simmons' negligence in causing his injuries. Plaintiff has opposed Simmons' motion, arguing that disputed facts remain as to Simmons' culpability. Plaintiff has also moved for summary judgment, arguing that Simmons' defense of comparative and

contributory negligence must be dismissed.

The key issues in this case are whether Simmons had a duty of care to plaintiff, and, if so, whether Simmons breached that duty, and whether that breach caused plaintiff's injuries. The Court finds that plaintiff cannot meet his burden on any of these issues.

In his complaint, plaintiff alleges that Simmons was negligent, under New Jersey common law, in loading a bathroom cabinet with heavy tools and failing to notify or warn anyone about the storage of tools in the bathroom cabinet.[3] General negligence principles govern the determination of whether a legal duty should be imposed on a contractor for injuries sustained by

---

[3] In his opposition papers, plaintiff also alleges that in addition to Simmons' violation of common law negligence principles, Simmons, as a general contractor, had a duty to maintain the work site in a safe condition. Plaintiff, however, does not cite to any statue or case law to support a claim for negligence "in failing to provide and maintain good housekeeping and safety on the site." (Pl. Statement of Facts ¶ 77.)

Although the Department of Labor, Occupational Safety and Health Administration ("OSHA") "regulations were not intended to impose direct liability or provide an independent tort remedy, . . . a jury could find the failure to comply with OSHA regulations relevant to the proximate cause inquiry in a negligence action," and that "OSHA regulations are pertinent in determining the nature and extent of any duty of care." Alloway v. Bradlees, Inc., 723 A.2d 960, 966, 967 (N.J. 1999) (citations omitted) (finding "applicable in the circumstances of this case the well-established principle that the violation of a legislated standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established"). Plaintiff here has not shown how Simmons violated any OSHA regulations. Thus, any claim based on a duty of care beyond general negligence principles is unsupportable.

another.  Slack v. Whalen, 742 A.2d 1017, 1019 (N.J. Super. Ct. App. Div. 2000) (citing Alloway v. Bradlees, Inc., 723 A.2d 960, 965 (N.J. 1999)).  Although "the foreseeability of the risk of injury" is the major consideration for imposing a tort duty, additional factors should be considered, such as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution."  Id. (citations omitted).  These factors must be identified, weighed and balanced before a duty will be imposed, and "the analysis leading to the imposition of a duty of reasonable care is both fact specific and principled."  Id. (citing Alloway, 723 A.2d at 965) (other citation omitted).

In this case, plaintiff argues that it was foreseeable to Simmons that the bathroom cabinet would have to be moved in order for the floor work to be completed, and that it was foreseeable that locking his heavy tools in the cabinet would pose an injury risk to anyone who was required to move the cabinet.  Simmons disputes that he was aware of the need to remove the cabinet in order for the floor to be redone, and that the tools caused the cabinet to weigh 377 lbs., as opined by plaintiff's expert, which caused it to be a hazard.

Even accepting as true plaintiff's assessment of what Simmons knew or should have known about the danger of locking his

7

heavy tools in the bathroom cabinet, as the Court must do in considering defendant's summary judgment motion, the foreseeability of the risk does not end the inquiry into whether Simmons is liable for plaintiff's injuries.  As explained by the New Jersey courts, the relationship of Simmons and plaintiff, the nature of the risk, the opportunity and ability to exercise care, and the public interest, are all additional factors that must be considered before liability is imposed.

With regard to the relationship between Simmons and plaintiff, there was none.  Simmons was contracted by Trane to perform remodeling work on its bathrooms, and plaintiff was an employee of Trane, serving as a maintenance mechanic.  There is no evidence in the record showing that Simmons and plaintiff had any interaction with each other.  Thus, the lack of relationship between plaintiff and Simmons negates any duty Simmons would have to plaintiff that would have arisen from any relationship, such as one between a general contractor and employees of a subcontractor.  Cf. Wolczak v. National Elec. Products Corp., 168 A.2d 412, 414-15 (N.J. Super. Ct. App. Div. 1961) (explaining that the "liability of a general contractor to employees of subcontractors performing construction or other work on the premises is founded in part on the assumption that the owner has placed the general contractor in physical control of the job site. . . . [H]is supervision of or active participation in the

manner of work of the subcontractor may result in the imposition of a broader duty of care, premised essentially on the emergence of a sufficient degree of detailed superintendence over the latter's employees as to invoke a legal relationship analogous to that of master-servant").[4]

As for the nature of the risk, and the opportunity to exercise care, these two factors also weigh against the imposition of a duty of care on Simmons to plaintiff. Plaintiff was ordered by his superior at Trane to move the cabinet. Finding it locked and unable to determine its contents, plaintiff informed his supervisor about the condition of the cabinet, but the supervisor told plaintiff to move it anyway. Plaintiff, along with his co-worker, Haas, determined the method to remove the cabinet from the bathroom: slide a dolly underneath it, tilt

---

[4] Plaintiff argues that because Simmons is a "general contractor" and Simmons considered himself the "general contractor" for the bathroom remodel at Trane, Simmons should be held to the standards imposed on general contractors. See Wolczak v. National Elec. Products Corp., 168 A.2d 412, 414-15 (N.J. Super. Ct. App. Div. 1961) (explaining the duty of a general contractor to employees of its subcontractors). Even if Simmons were considered the general contractor of the bathroom remodel, and plaintiff were considered an employee of the subcontractor, "[a]bsent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition to the premises or the manner in which the work is performed. Nor is his immunity disturbed by the exercise of merely such general superintendence as is necessary to insure that the subcontractor performs his agreement." Id. (citation omitted). As explained herein, Simmons had no involvement in deciding to remove the cabinet, or how it should be removed.

it back, and guide it down the stairs, with plaintiff in front acting as the "brake man." Plaintiff was aware of the weight of the cabinet, and he was aware that unknown contents were locked inside, yet he still decided to move it. Plaintiff also decided how to move it, and he decided to stand below the cabinet on the stairs, trusting that Haas could sufficiently control its weight on the decent. At this point, it does not matter if Simmons had filled the cabinet with feathers or bricks--independent of what was in the cabinet and why, and who put it there, plaintiff assessed the risk of moving the cabinet, and chose to move it in a manner he determined. Simmons had no involvement in any of these decisions by plaintiff, Haas, or their supervisor at Trane.

Under these circumstances, public policy would also disfavor the imposition of liability onto Simmons. In legal terms, the principle of proximate cause embodies that public policy consideration. Proximate cause is a term that draws "judicial lines beyond which liability will not be extended" and "is fundamentally as an instrument of fairness and policy." Caputzal v. Lindsay Co., 222 A.2d 513, 517-18 (N.J. 1966) ("Many years ago a case in [New Jersey] hit it on the head when it was said that the determination of proximate cause by a court is to be based 'upon mixed considerations of logic, common sense, justice, policy, and precedent.'"(citation omitted)).

In order for plaintiff to be successful on this negligence

claim against Simmons, he must show that Simmons's wrongful conduct was a substantial factor in bringing about harm to him. See James v. Arms Technology, Inc., 820 A.2d 27, 39 (N.J. Super. Ct. App. Div. 2003) (explaining that in a negligence action, a plaintiff must prove "'causation in fact'; that is, the result complained of would not have occurred 'but for' the negligence of defendant'"). "[A] tortfeasor will be held accountable if its negligent conduct was a substantial factor in causing the injury even when there are other 'intervening causes which were foreseeable or were normal incidents of the risk created.'" Id. (citation omitted).

No liability is imposed onto a defendant, however, where "an intervening act of a third party, which actively operates to produce harm after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable for the harm which his antecedent wrongful act was a substantial factor in bringing about." Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004) (citing Restatement (Second) of Torts § 440-441 (1965)). Additionally, although the issue of proximate cause is typically one for a jury, non-liability for a superseding cause is a question of law for the court. J.S. v. R.T.H., 714 A.2d 924, 935 (N.J. 1998); Caputzal, 222 A.2d at 518.

As the Court stated above, even if it was foreseeable to Simmons that locking his tools into the bathroom cabinet would

11

cause the cabinet to be heavy and difficult to move, and that it was foreseeable that the cabinet would have to be moved prior to the new floor installation, the superseding acts by plaintiff, Haas, and their supervisor at Trane extinguish causation as to Simmons' liability.

Plaintiff's claim against Simmons presumes a type of strict liability for Simmons' actions--that is, under plaintiff's view of the case, Simmons' act of locking tools in a cabinet that has to be moved makes Simmons liable for whatever injuries the cabinet inflicts on others, regardless of the others' actions relative to the cabinet.  This premise has no basis under New Jersey law, as strict liability involves an absolute duty to make something safe, and typically only applies to products liability claims and ultra hazardous activities, both of which are not applicable here.  See, e.g., T & E Industries, Inc. v. Safety Light Corp., 587 A.2d 1249, 1259 (N.J. 1991) (explaining that the abnormally dangerous activity doctrine is premised on the principle that "one who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm"); Becker v. Tessitore, 812 A.2d 369, 379 (N.J. Super. App. Div. 2002) (explaining that "a basic reason for imposing strict liability was to hold accountable those who place a product in the stream

of trade and promote its purchase by the public").

Here, independent of any possibly negligent actions by Simmons, plaintiff, at the direction of his employer at Trane, devised a plan to move the bathroom cabinet, which he knew to be heavy and contain unknown items locked inside. Plaintiff's plan unfortunately caused injury to himself. Determining the scope of tort liability is the responsibility of the courts, and whether "a duty exists is ultimately a question of fairness." Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993). Under the circumstance of this case, Simmons cannot be held liable for plaintiff's injuries.

## CONCLUSION

For the reasons expressed above, defendant's motion for summary judgment must be granted, and plaintiff's motion for summary judgment to strike defendant's comparative and contributory negligence defense must be denied as moot. An appropriate Order will be entered.


Date: June 17, 2011                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.